UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELLA A. AYISSI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-227 |
| | § | |
| KROGER TEXAS, L.P., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendant Kroger Texas LP's ("Kroger") motion to dismiss (Dkt. 7) and motion for sanctions (Dkt. 12). Plaintiff Angella A. Ayissi has responded to both motions (Dkts. 10, 13), and Kroger replied (Dkts. 11, 14). After reviewing the motions, responses, replies, the complaint, judicially noticed records, and applicable law, the court is of the opinion that Kroger's motion to dismiss should be GRANTED, but that its motion for sanctions should be DENIED.

## I. BACKGROUND

### A. Pending Lawsuit

This is an employment discrimination suit. Ayissi was employed by Kroger as a cashier from 1996 until late 2017. Dkt. 1 ¶¶ 8–10; *see also* Dkt. 1-1. Ayissi alleges that on October 13, 2017, she suffered a severe anxiety attack because a former employee, whom she alleges had been stalking and harassing her, entered the store where she was working and approached her in a "menacing manner." Dkt. 1 ¶¶ 12–13. In response, Ayissi sought medical leave from her manager, Annette Pompa. *Id.* ¶ 12, 14. Ayissi claims that Pompa was required to give her documents that would have been helpful in completing her leave request, but that Pompa wrongfully withheld

those documents. *Id.* ¶¶ 15–16. She also claims that Pompa misled her by giving her incorrect information. *Id.* ¶ 14. Ayissi does not say whether Pompa actually granted her request for medical leave, but she does suggest that she did not return to work after she submitted the request, and that she believed she was properly on leave. *Id.* ¶ 17 ("while still out on leave").

Several weeks later, in November, Ayissi was summoned to the store where she worked to discuss her leave request. *Id.* ¶ 17. Ayissi alleges that when she visited the store in compliance with the directive she received, she spoke with Pompa, who again failed to give her necessary information and documents. *Id.* ¶ 18. She also claims that Pompa did not document her visit or warn her that she would be terminated if she did not "work a shift."[1] *Id.* ¶ 18–19. Ultimately, Kroger terminated Ayissi's employment. *Id.* ¶¶ 9–10, 21. Ayissi claims that this was the result of Pompa's mishandling her leave request. *Id.* ¶ 21.

On these facts, Ayissi asserts that Kroger is liable for race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), and discrimination and retaliation under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). *Id.* ¶¶ 24–38.

#### B. *Ayissi I*

The pending suit is the third lawsuit that Ayissi has pursued against Kroger.[2] The first suit (*Ayissi I*) was filed on October 29, 2010. Dkt. 7-2. In her Second Amended Original Complaint in *Ayissi I*, Ayissi claimed that Kroger had failed to protect her from another employee, whom she alleged had been stalking her and calling her derogatory epithets. Second Amended Original

---

[1] Ayissi actually writes that Pompa did not "advise [her] that if she *did* work a shift she would be terminated," but the court assumes this was a typo. Dkt. 1 ¶ 19 (emphasis added). Either way, it makes no difference to the resolution of this motion.

[2] Kroger has asked the court to take judicial notice of Ayissi's two previous suits and the attendant "pleadings and documents on file." Dkt. 7 at 2 n.1. The court takes notice of those pleadings and documents, agreeing that it is permissible and necessary in resolving this motion. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

Complaint ¶¶ 20–24, *Ayissi v. Kroger Tex. LP*, No. H-10-4201, 2012 WL 1936561 (S.D. Tex. May 29, 2012) (Atlas, J.).  Kroger identifies this employee as Peter Caciedo, a "special-needs sacker" employed through the Texana Disabilities Services Program.[3]  Dkt. 7 at 2.  Ayissi insisted that Kroger's failure to protect her constituted race and sex discrimination and retaliation under Title VII.  Second Amended Original Complaint ¶¶ 27–31.  She also alleged a number of state-law claims but then voluntarily dismissed them all before trial.  *See* Order Granting Motion to Amend, *Ayissi*, No. H-10-4201, 2012 WL 1936561, ECF No. 43.  The court also dismissed Ayissi's retaliation claim in response to Kroger's motion for summary judgment.  *Ayissi*, 2012 WL 1936561, at *17–18.  By the time the case went to trial, the only question was whether Ayissi had been harassed on the basis of her race or sex.  Dkt. 7-3.  A jury answered that question in the negative, finding in favor of Kroger.  *Id.*  The court in Ayissi's first suit entered its final judgment on August 9, 2012.  Dkt. 7-4.

### C.  Ayissi II

Ayissi filed her second suit against Kroger on February 16, 2018, almost a decade after she filed the first suit.  Dkt. 7-6.  Ayissi explained that she had filed an internal grievance in February 2015, in which she complained about "sexual harassment, discrimination, and hostile work environment."  Dkt. 7-7 ¶ 9.  In that grievance, she had alleged that her "Co-manager, Mr. Wellington" made inappropriate comments and divulged her confidential information to other employees to "create friction and discord."  *Id.* ¶¶ 10.  Ayissi contended that Kroger had retaliated against her for making this internal grievance and others.  *See id.* ¶ 33.  She also claimed that less-senior employees were given a more favorable schedule than she was, and that her schedule-change requests were wrongfully denied.  *Id.* ¶ 12.

---

[3] Caciedo is the same person who is alleged in the pending suit to have entered the store where Ayissi worked, causing her anxiety attack.

The bulk of Ayissi's complaint in *Ayissi II*, however, regarded her efforts to seek medical leave.  *Id.* ¶¶ 13–25.  She asserted that she had timely and properly sought medical leave for the period beginning September 28, 2015, and ending October 13, 2015.  *Id.* ¶ 13.  Ayissi alleged that Mary Bowman (administrative assistant), Jeff Priestly (store manager), and Human Resources denied her leave request even though she had provided proper documentation.  *Id.* ¶ 13.  She claimed that she was told she would be fired unless she worked on October 12 and 13, dates when she had hoped to be out on leave.  *Id.* ¶¶ 15–16.

Ayissi also discussed another time she was denied leave.  She alleged that Caciedo—the stalker/harasser who appears in all three complaints—entered the store where she was working on or around October 22, 2015, causing her to "pass[] out from the anxiety and stress of the encounter."  *Id.* ¶¶ 17–20.  Ayissi claimed that her doctor had advised her not to return to work after this incident, and so she submitted another request for medical leave.  *Id.* ¶¶ 22–23.  She alleged that Priestly, the store manager, "led [her] to believe her request was approved," but that Kroger contacted her "while [she was] out on leave" and explained that her leave was unauthorized.  *Id.* ¶¶ 23–24.  Finally, although she did not elaborate, Ayissi concluded by alluding to additional leave requests that had been denied in the fall of 2015.  *Id.* ¶ 25.

On these facts, Ayissi pursued claims of race discrimination, retaliation, and hostile work environment under Title VII.  *Id.* ¶¶ 30–42.  She claimed to have "suffered irreparable injury from [Kroger's] policies and practices . . . up to an [sic] including termination."  *Id.* ¶ 32.

Kroger moved for summary judgment and Judge Gilmore granted Kroger's motion with respect to all claims.  Dkt. 7-11.  Notably, the court wrote in its order that "[t]he evidence in the record shows only one adverse employment decision by Defendant, namely Plaintiff's employment termination."  *Id.* at 7.  The court analyzed the retaliation and discrimination claims

with regard to Ayissi's termination and found in favor of Kroger.  *Id.* at 7–8.  With respect to the hostile work environment claim, this court granted summary judgment for Kroger because Ayissi failed to prove that the conduct alleged was "sufficiently severe or pervasive to alter the conditions of her employment."  *Id.* at 10.

## II.  MOTION TO DISMISS

Kroger first asks the court to dismiss Ayissi's suit as barred by res judicata.

### A.  *Legal Standard*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007).  In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The supporting facts must be plausible— enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

Generally, a res judicata contention "cannot be brought in a motion to dismiss," but must instead "be pleaded as an affirmative defense."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d

559, 570 n.2 (5th Cir. 2005) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2002)).   But when it is clear from the face of the pleadings that the elements of res judicata are satisfied, then dismissal under Rule 12(b)(6) may be appropriate.   *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A] claim may . . . be dismissed if a successful affirmative defense appears on the face of the pleadings.").   Additionally, when the court reviews a Rule 12(b)(6) motion to dismiss, "the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken."   *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

   B.   *Analysis*

   "The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action."   *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 312–13 (5th Cir. 2004) (citation omitted).   "Federal law determines the res judicata effect of a prior federal court judgment."   *Robinson v. Nat'l Cash Reg. Co.*, 808 F.2d 1119, 1124 (5th Cir. 1987), *abrogated on other grounds by Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988) (en banc).   Res judicata bars a claim if four elements are met: "(1) the parties in both the prior suit and current suit must be identical; (2) a court of competent jurisdiction must have rendered the prior judgment; (3) the prior judgment must have been final and on the merits; and (4) the plaintiff must raise the same cause of action in both suits."   *Davis*, 383 F.3d at 313.

   Kroger argues that Ayissi's suit must be dismissed because it is barred by res judicata. Dkt. 7 at 5.   Kroger characterizes the claims presented in this suit as "virtually identical" to the claims in *Ayissi II*, advanced in an "apparent effort to circumvent" this court's prior adverse ruling

against Ayissi.  *Id.* at 1.  In her response,[4] Ayissi does not dispute that the first three res judicata

elements are satisfied.  Dkt. 10 at 2.  That is, she agrees that *Ayissi II* involved the same parties as

the current suit and that a court of competent jurisdiction issued a final judgment on the merits in

that case.  Ayissi's sole contention is that the two suits do not involve the same cause of action.  *Id.*

at 2.  To support this contention, she argues that the claims stem from different sets of operative

facts.  *Id.* at 2–4.  Alternatively, she argues that the claims in the current lawsuit could not have

been brought in *Ayissi II* because she had not yet received a right-to-sue letter from the EEOC

regarding these claims.  *Id.* at 4–5.

Courts in the Fifth Circuit determine "whether two suits involve the same claim or cause

of action by applying the transactional test . . . .  Under the transactional test, [the court's] inquiry

focuses on whether the two cases . . . are based on the 'same nucleus of operative facts.'"  *United

States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (citations omitted).  "If the cases are based

on the same nucleus of operative facts, the prior judgment's preclusive effect 'extends to all rights

the original plaintiff had "with respect to all or any part of the transaction, or series of connected

transactions, out of which the [original] action arose."'"  *Id.* (alteration in original) (quoting *Petro-

Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004)).  What set of facts constitutes

a transaction or series of transactions must be "determined pragmatically, giving weight to such

considerations as whether the facts are related in time, space, origin, or motivation, whether they

form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectations or business understanding or usage."  *Petro-Hunt, L.L.C.*, 365 F.3d at 395 (quoting

Restatement (Second) of Judgments § 24(2) (Am. L. Inst. 1982)).

---

[4] Kroger asks this court to strike as untimely Ayissi's response (Dkt. 10) to its motion to dismiss.  Dkt. 11 at 2.  The court declines to do so because it recently granted Ayissi's unopposed motion to extend the deadline to file a response (Dkt. 8).  *See* Dkt. 19.  The court set Ayissi's new deadline to respond as May 1, 2020 (the date Ayissi actually filed her response), thereby rendering moot Kroger's efforts to strike Ayissi's response as untimely.  Dkt. 19.

Kroger asserts that "it is without question" that the claims in both suits stem from the same nucleus of operative facts, "the basis for Plaintiff's termination." Dkt. 7 at 9.  It contends that Ayissi's termination was fully briefed by the parties in *Ayissi II* and considered by this court in its order granting Kroger's motion for summary judgment. *Id.* at 8.  Finally, Kroger argues that it is the law of this circuit that "successive discrimination claims brought under different theories or statutes are barred by *res judicata*." *Id.* at 8.

Ayissi disagrees that both suits stem from the same nucleus of operative facts. Dkt. 10 at 2.  She concedes that the claims are "similar" but maintains that the operative facts underlying each suit are from separate nuclei.  *Id.* at 3.  Ayissi points out that she "did not allege wrongful termination" in *Ayissi II*.  *Id.* at 3.  As she tells it, *Ayissi II* pertained to conduct occurring between February 2015 and March 2016, implicated Jeff Priestly and Mr. Wellington, and primarily regarded a request for leave spanning September 28–October 13, 2015.  *Id.* at 3.  On the other hand, she maintains, the present suit involves "[c]onduct by a different manager, occurring more than 18 months later." *Id.* at 3.  Moreover, she argues that "[s]ubsequent claims 'cannot be barred by prior litigation . . . based on earlier, different alleged instances of discrimination.'"  *Id.* at 2 (quoting *Munoz v. Aldridge*, 894 F.2d 1489, 1495 (5th Cir. 1990)).

*1.  Serial Discrimination Suits*

First, the court finds it prudent to discuss the propriety of serial discrimination suits.  Not only does Ayissi broadly claim, based on *Munoz*, that later claims of discrimination cannot be barred by earlier litigation concerning different instances of discrimination, she also relies, in a later filing (Dkt. 13) on *Blair v. City of Greenville* for the proposition that Title VII plaintiffs are "entitled to file successive lawsuits when there are allegations of subsequent wrongs which constitute new causes of action."  Dkt. 13 at 7 (citing *Blair v. City of Greenville*, 649 F.2d 365,

368 (5th Cir. 1981)).  The court notes that in *Blair*, the sentence directly before the one that Ayissi

relies on reads: "[Res judicata] does not, however, bar a suit based on acts of the defendant that

have occurred *subsequent to the final judgment* asserted as a bar." *Blair*, 649 F.2d at 368 (emphasis

added).  In other words, *Blair* holds that a new wrong occurring after a final judgment cannot be

barred by that final judgment.  This is a matter of some disagreement, but not in any way that

benefits Ayissi.  Elsewhere, the Fifth Circuit has declared: "While this court has held that

'subsequent wrongs by a defendant constitute new causes of action,' the principle of 'subsequent

wrongs' only applies if those wrongs occurred (1) 'after the plaintiffs had filed their prior lawsuit'

or (2) 'after the district court had entered judgment in the prior lawsuit.'" *Murry v. Gen. Servs.

Admin.*, 553 F. App'x 362, 365 (5th Cir. 2014) (unpublished) (quoting *Davis*, 383 F.3d at 314).

To the extent that Ayissi claims that her suit is permitted as a "subsequent wrong," she is mistaken

because all of the conduct complained of in *Ayissi II* and the present suit occurred *before* the filing

of *Ayissi II*.  Therefore, no claims in the present suit are "subsequent wrongs" to which res judicata

is inapplicable.  Instead, the court must assess whether the transactional test is satisfied.

### 2.  Ayissi's Termination

Next, there is a major dispute between the parties about whether *Ayissi II* entailed a claim

for wrongful termination.  Ayissi claims that she never alleged wrongful termination in *Ayissi II*,

while Kroger maintains that the claim was fully briefed and that the court ruled on it.  As support

for this contention, Kroger offers several persuasive quotes from *Ayissi II* documents.  Dkt. 7 at 8;

Dkt. 11 at 3–5.

First, Kroger quotes Judge Gilmore's order granting it summary judgment in *Ayissi II*.  The

quote reads:

> Although Plaintiff raises numerous allegedly discriminatory acts by Defendant . . .
> the record shows only one adverse employment decision by Defendant, namely

> *Plaintiff's termination* . . . Plaintiff has failed to state a prima facie case.  Moreover, Defendant has provided a legitimate nondiscriminatory reason for its decision to terminate Plaintiff by showing that Plaintiff was on leave for 17 months and refused to return to work.

Dkt. 7 at 8 (quoting Dkt. 7-11 at 7).  It is clear from this quote that this court considered and ruled on the issue of whether Ayissi's termination was the product of unlawful race discrimination or retaliation.

Kroger next explains that it thoroughly briefed the issue of wrongful termination in its motion for summary judgment in *Ayissi II*.  *Id.* at 8 & n.31; Dkt. 11 at 5; *see also* Dkt. 7-10 at 7 (summarizing Kroger's summary judgment arguments, which primarily center around Ayissi's termination).  Additionally, Kroger directed the court's attention to Ayissi's motion for new trial in *Ayissi II*.  Dkt. 11 at 5.  Specifically, Kroger highlights the following quote:

> Furthermore, Plaintiff did not refuse to return to work as falsely stated by the defendant.  Plaintiff was out on leave, under doctors, orders, as a result of her anxiety and depression brought on by the harassment she faced [at] work and the failure of her employer to value her enough to protect her safety.  <u>In August 2017 and through November 2017, Plaintiff was not aware of any new policies that gave Met Life the authority to approve employee leave requests</u>.  In fact, Mario the union steward told Plaintiff that to the extent management told her that they no longer handle the paperwork to get an employee paid while out on leave was a lie.

Dkt. 11 at 5 (quoting Dkt. 7-13 at 16).  It is clear from this quote that Ayissi contested the reason for her termination.  She even specifically mentioned the time period of August–November 2017, a period that she claims to be distinct from her *Ayissi II* claims, which she insists only relate to the period of February 2015–March 2016.[5]  Dkt. 10 at 3.  Judge Gilmore denied her motion for new trial, writing that: "[T]his Court has already considered the evidence raised in Plaintiff's Motion

---

[5] It is odd that the court is urged to look at a motion for new trial to determine whether a certain claim was litigated in a prior suit, but that is because Ayissi failed to timely respond to Kroger's motion for summary judgment in that suit.  Dkt. 7 at 3.

for New Trial.  Plaintiff has not provided any new details that would alter this Court's findings in

this case." Dkt. 7-15 at 3.

To summarize:

- Kroger briefed the issue of Ayissi's termination in its motion for summary judgment in *Ayissi II*;
- This court granted that motion, explicitly holding that Ayissi's termination was not the result of race discrimination or retaliation;
- Ayissi contested, in a motion for new trial, Kroger's arguments regarding the reasons for her termination; and
- This court denied Ayissi's motion for new trial, explaining that it had already considered the evidence raised.

This list strongly supports Kroger's contention that the issue of Ayissi's termination was briefed

by both sides and ruled on by the court. And the parties' briefing and the court's orders in *Ayissi II*

offer strong support for the premise that the two suits stem from the same nucleus of operative

facts.

But that is not the only support.  Kroger also points to an exchange in its deposition of

Ayissi during the *Ayissi II* litigation.  The exchange is included below:

> **Q.  Now, in this lawsuit are you claiming that your termination was an act of discrimination or retaliation?**
>
> A.  Ultimately, it was.
>
> **Q.  And that's one of the claims in this lawsuit?**
>
> **A.  It's a claim.**
>
> Q.  It's a claim in this lawsuit?
>
> A.  It's a claim.
>
> Q.  That wasn't my question. **Is it a claim in this lawsuit?**
>
> **A. Yes.**

Dkt. 11 at 4–5.  Finally, Ayissi wrote in her First Amended Complaint in *Ayissi II* that she "suffered

irreparable injury from Defendant's policies and practices as stated in this petition up to an [sic]

including termination."  Dkt. 7-7 ¶ 32.  This quote from the complaint paired with Ayissi's own

deposition testimony provide two situations where she indicated unequivocally in her own words that her termination was at issue in *Ayissi II*.

Given that Ayissi herself explained that her termination was at issue in *Ayissi II*, both parties discussed it in their motions before this court, and this court analyzed whether her termination was the product of discriminatory or retaliatory conduct and ruled that it was not, the court concludes that Ayissi's termination was part of the nucleus of operative facts that made up her causes of action in *Ayissi II*.

### 3.  Same Nucleus of Operative Facts

The court now turns to its analysis of whether the two suits stem from the same nucleus of operative facts.  In determining the answer to this question, the court must weigh pragmatic considerations, including "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Petro-Hunt, L.L.C.*, 365 F.3d at 395 (quoting Restatement (Second) of Judgments § 24(2)).  Weighing these considerations, the court concludes that the conduct complained of in *Ayissi II* and that complained of in the instant suit constitute a series of connected transactions and therefore present the same claim.

Ayissi claims that the facts underlying the two suits are sufficiently distinct in time so as to preclude their characterization as a single claim.  Dkt. 10 at 3.  She argues that the conduct in this suit "occur[ed] more than 18 months" after the conduct at the center of *Ayissi II*.  *Id.*  She neatly confines the conduct from *Ayissi II* into the period from February 2015 to March 2016 and that from the current suit into the period from September to December 2017.  *Id.*  Initially, the periods seem completely distinct.  As discussed above, however, *Ayissi II* included a claim regarding the propriety of Ayissi's final leave request and termination.  Therefore, the time frame

of *Ayissi II* is better understood as the period from February 2015 to December 2017, overlapping with the period forming the basis of the instant suit.  And with respect to space, both suits pertain to Ayissi's employment at a specific store.  Both suits regard decisionmakers in the same store making leave determinations.  Both suits include details about stalking incidents that occurred at the same store.  In both cases, the stalking incidents provoked anxiety attacks, which formed the core of Ayissi's leave requests.  These considerations counsel in favor of finding that the two suits are the same claim.

Above all else, the two cases would have made an extremely convenient trial unit because they deal with essentially the same sequence of events.  While parallel facts are not dispositive in a res judicata analysis, they are a persuasive indication that two suits stem from the same set of operative facts.  *See Test Masters Educ. Servs., Inc.*, 428 F.3d at 572 (finding that two suits containing parallel facts did not stem from the same set of operative facts).  In the pending suit, Ayissi alleges that the following occurred:

- Ayissi filed an internal grievance
- Ayissi saw Caciedo at the store where she worked, causing Ayissi to have a "severe anxiety attack"
- Ayissi submitted a request for medical leave
- Store manager Anette Pompa gave some incorrect information and withheld documents
- While out on leave, Ayissi was terminated

Dkt. 1 at 2–3.  Compare that with the following list of allegations in *Ayissi II*:

- Ayissi filed an internal grievance
- Ayissi sought medical leave but was denied
- Ayissi saw Caciedo at the store where she worked, causing Ayissi to "pass out from the anxiety and stress"
- Ayissi submitted a new request for medical leave

- Store manager Jeff Priestly misled Ayissi into thinking the request had been approved
- While out on leave, Kroger sent her a letter saying leave was unauthorized
- [While on leave two years later, Ayissi was terminated][6]

Dkt. 7-7 at 2–5.  Both suits complain of essentially the same pattern of events: Ayissi sees Caciedo, has an anxiety attack, seeks leave, is misled by Kroger management, and is notified while on leave that her leave is improper.  And fundamentally, both entail the same alleged motivation, retaliation for filing grievances and discrimination on the basis of sex, race, or disability.  Both suits would have required similar inquiries, witnesses, and evidence.  It is also notable that Ayissi had already filed the EEOC charge which forms the basis of the present suit before she brought suit in *Ayissi II* on February 16, 2018.  *See* Dkt. 1-1 (showing EEOC charge filed January 11, 2018).  So, not only *could* she have brought both suits in the same action, but she had already started the administrative process for the present suit, almost certainly contemplating—if not already fully committed to—litigation.

To the extent both suits involve claims for Ayissi's wrongful termination, they certainly stem from the same set of operative facts.  *See Miller v. U.S. Postal Serv.*, 825 F.2d 62, 64 (5th Cir. 1987) (sex discrimination suit barred by res judicata where prior handicap discrimination suit also sought recourse for termination); *Fleming v. Travenol Labys., Inc.*, 707 F.2d 829, 834 (5th Cir. 1983) ("As we said in *Nilsen*, when one has a choice of more than one remedy for a given wrong, here the suspension and discharge, he or she may not assert them serially, in successive actions, but must advance all at once on pain of bar."); *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 898 (5th Cir. 2009) (unpublished per curiam decision) (barring Sarbanes-Oxley whistleblower claim where prior Title VII suit sought to remedy same termination); *Benson v. City*

---

[6] As the court discussed above, while not explicitly alleged in the complaint in *Ayissi II*, wrongful termination was part of Ayissi's suit.

*of Texas City*, No. 3:13-CV-23, 2014 WL 948901, at *2 (S.D. Tex. Mar. 11, 2014) (Costa, J.) ("Though Benson asserts a new retaliation claim in this case, the retaliation claim is based on the same adverse action—the termination—that gave rise to *Benson I*."); *see also Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (en banc) (holding that a plaintiff who has a choice of remedies for a particular wrong must assert them in one suit, rather than serially).

But looking at the rest of the facts forming the basis of each suit, it becomes clear that Ayissi is complaining of a string of connected allegedly discriminatory transactions regarding management's denial of her medical leave requests. Because the facts from both suits represent a series of connected transactions, the conduct discussed in each stems from the same set of operative facts. *See Davis*, 383 F.3d at 314 ("[T]he barred claims in *Davis II* and the wrongs alleged in *Davis I* constitute a series of connected transactions and are the same claim. While factual allegations articulated in the two complaints differ, all of the claims in question originate from the same continuing course of allegedly discriminatory conduct by DART and Chief Rodriguez. Additionally, both lawsuits cite the same motivation for the alleged discrimination . . . ."). That set of facts includes Ayissi's internal grievances, her repeated medical episodes in the store, her frequent and numerous requests for leave, Kroger's acceptances and denials of those requests, and the disciplinary measures that Kroger took against Ayissi when it determined she was on unauthorized leave (up to and including termination). Because both suits stem from the same set of operative facts, the court agrees with Kroger that the claims brought in the present suit are precluded by the doctrine of res judicata.

### 4. EEOC Charge

Although she denies that the claims in this suit and in *Ayissi II* are the same, Ayissi argues in the alternative that she could not possibly have brought the claims in the present suit in *Ayissi*

*II* because they were "not mature." Dkt. 10 at 5. She argues that she had only filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) regarding the conduct alleged in the pending suit one month prior to filing *Ayissi II*, and that she could not therefore bring those claims in *Ayissi II* because she had not yet exhausted her administrative remedies as required by statute. *Id.*; *see also* 42 U.S.C. § 2000e-5(e)(1), (f)(1) (requiring a complainant to submit a charge to the EEOC and wait for a right-to-sue letter before bringing suit). Although she does not say it explicitly, Ayissi is essentially arguing that she could not sue on the claims in the EEOC charge filed in January of 2018 because she had not yet received a right-to-sue letter from the EEOC. Kroger contends that Ayissi's failure to stay the proceedings until she could include the claims from the January 2018 charge means that her claims are barred. Dkt. 11 at 6.

Unfortunately for Ayissi, the law is very clear on this point. "[A] plaintiff who brings a Title VII action and files administrative claims with the EEOC must still comply 'with general rules governing federal litigation respecting other potentially viable claims.'" *Davis*, 383 F.3d at 316 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992)). Just like the claims in *Davis*, the claims in the present suit "arose from the same nucleus of operative fact" as the claims in *Ayissi II* "and they predate that action, [so Ayissi was] on notice to include those claims [in *Ayissi II*]." *Id.* at 316. In order to evade the application of res judicata to preclude the claims in her January 2018 EEOC charge, Ayissi could have sought a stay in *Ayissi II* until she had exhausted the administrative procedure with respect to the additional claims. *See id.* at 315. She also could have amended her complaint to include the claims from the January 2018 charge. Because she did neither, the claims are subject to the "general rules of federal litigation respecting other potentially viable claims," which in this case means they are barred by the doctrine of res judicata. *Id.* at 316.

### III. MOTION FOR SANCTIONS

In a separately filed motion, Kroger asks the court to impose sanctions on Ayissi and her attorney, Deshonda P. Charles, for "filing unnecessary duplicative litigation, which is clearly barred by the doctrine of *res judicata* and well-settled case authority."  Dkt. 12 at 5.  It claims that the present suit and *Ayissi II* are "virtually identical."[7]  *Id.* at 1.  Kroger characterizes the pending suit as "an apparent effort to circumvent [this court's] prior orders."  *Id.*  Kroger claims that these "repeated and abusive filings are harassing and deprive[] Kroger of peace from further litigation to which it is entitled," and that they have "needlessly increased the cost of litigation."  *Id.* at 6. Specifically, Kroger is requesting that the court require Ayissi and Charles to pay its costs and attorneys' fees incurred in this action.  *Id.* at 8.

Ayissi counters by explaining that she has a "good faith belief that her claims are warranted under existing law and supported by evidence."  Dkt. 13 at 1.  She maintains that Kroger's "frustration stems from the fact that [she] is willing to seek justice . . . through the court system." *Id.* at 5.  She claims that Kroger is merely seeking to silence her.  *Id.*

Rule 11(b) requires that an attorney certify, after a reasonable inquiry, that every pleading, written motion, or other paper submitted to the court (1) is not presented for any improper purpose; (2) contains legal contentions that are "warranted by existing law or by a nonfrivolous argument" that the law should be changed; (3) contains factual contentions that are (or are likely to be) supported by evidence; and (4) contains denials that are warranted by the evidence or based on belief or lack of information.  Fed. R. Civ. P. 11(b).  The imposition of sanctions under Rule 11 is left to the district court's discretion.  *See Marlin v. Moody Nat'l Bank, N.A.,* 533 F.3d 374, 377

---

[7] Kroger repeatedly emphasizes that this is the "*third* lawsuit" that Ayissi has filed against it.  *See, e.g.*, Dkt. 12 at 1. This is technically true, but Kroger is only truly arguing that the present suit is duplicative of the second.  There are no allegations that the second or third suits are duplicative of the first. Therefore, the court finds these references unavailing.

(5th Cir. 2008) (stating that the abuse-of-discretion standard applies to the imposition of Rule 11 sanctions); *In re Dragoo,* 186 F.3d 614, 616 (5th Cir. 1999) ("[T]he district court has broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11." (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 533 (5th Cir. 1992))). But "a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993). "An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness." *Snow Ingredients, Inc. v. Snowizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc)). Finally, "[r]easonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

Kroger contends that Ayissi should be sanctioned because she brought the pending suit for an improper purpose (to harass and increase litigation costs) and because her suit has no basis in law or fact. In other words, Kroger is claiming that Ayissi has violated provisions 1–3 of Rule 11(b). *See* Fed. R. Civ. P. 11(b)(1)–(3).

Kroger also repeatedly references Ayissi's "dilatory conduct" as a basis for sanctions. Dkt. 14 at 4. Conduct that does not involve a filing, however, does not fall within the ambit of Rule 11, so the court does not consider Ayissi's failure to timely respond to various filings throughout the parties' litigation history. *See Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 458 (5th Cir. 2020) ("It follows from the text of Rule 11 that it applies *only* where a person files a paper." (citations omitted)). "That's why a district court should 'evaluate[] an attorney's conduct at the time a pleading, motion, or other paper is signed.'" *Id.* (quoting *Thomas*,

836 F.2d at 874).  The only potentially sanctionable conduct that Kroger raises, then, is the filing

of the pending suit on January 21, 2020.  Following the 'snapshot rule,' the court must assess

whether doing so was reasonable at that time under the applicable standards for each provision of

Rule 11.

With respect to the allegation that Ayissi's suit is not warranted by existing law or a

nonfrivolous argument for changing the law, the court finds that Ayissi's claims are "not so

obviously foreclosed by precedent as to make them legally indefensible."  *Snow Ingredients, Inc.*,

833 F.3d at 529.  Nor does the complaint in this suit "indicate that [Ayissi] neglected her 'duty of

reasonable inquiry into the relevant law.'"  *Id.* (quoting *CJC Holdings*, 989 F.2d at 793).  As

demonstrated above, a res judicata analysis involves an amorphous inquiry into whether two suits

involve the same nucleus of operative facts.  In this case, it was not immediately obvious to the

court whether the two suits did.  In fact, Ayissi made a decent argument that the two suits were

distinct.  Ultimately, her argument fails, but that does not make it frivolous—let alone legally

indefensible.

Next, the court disagrees with Kroger that Ayissi's claims lack evidentiary support.  The

critical question is "whether an attorney has made a reasonable factual inquiry."  *See Smith*, 960

F.2d at 444.  Kroger's primary argument under Rule 11(b)(3) is that Ayissi lost in *Ayissi II*, and

therefore "this Court has already determined that [her wrongful termination] claim[] . . . ha[s] no

evidentiary support or legal basis."  Dkt. 12 at 5.  This contention seems to fall short of the

specificity required by Rule 11.  Fed. R. Civ. P. 11(c)(2) (requiring movants to "describe the

specific conduct that allegedly violates Rule 11(b)").  Kroger does specify the pleading at issue

(complaint), but points to no specific facts that they contend lack evidentiary support and alleges

no specific flaws in Ayissi's investigation of the facts.  For this reason, the court finds that there

was no sanctionable violation of Rule 11(b)(3) without undergoing the customary analysis.  *See*

*Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1026 (5th Cir. 1994) (listing the factors

used to analyze the reasonableness of a factual investigation).  The court agrees that the claims in

the pending suit are barred by res judicata, but that is not the same thing as lacking evidentiary

support.  If Ayissi's claims were not barred, that would not make a difference in the Rule 11(b)(3)

analysis.  From the face of the complaint, it is apparent that Ayissi and her attorney conducted a

reasonable inquiry into the facts.  Ayissi points to specific, documented, and easily verifiable

events including her termination, dates Caciedo entered the store, dates of leave, leave requests

submitted, medical emergencies, meetings with supervisors, and EEOC records. This is all

information that was accumulated over the course of Ayissi's investigation into the facts, which

seems to have been reasonable.  Therefore, the court finds no sanctionable violation of Rule

11(b)(3).

Finally, turning to the allegation that Ayissi filed the present suit for an improper purpose,

the court finds no violation.  A district court generally will not sanction an attorney who has

presented a nonfrivolous legal argument based on a reasonable factual inquiry.  *See FDIC v.*

*Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008).  But it may do so when an improper purpose is

"objectively ascertainable."  *Id.* (quoting *Whitehead*, 332 F.3d at 805).  Kroger seems to argue that

Ayissi filed the pending lawsuit to harass and needlessly increase the costs of litigation, two

improper purposes specifically identified in Rule 11(b)(1).[8]  Dkt. 12 at 7; *see also* Fed. R. Civ. P.

11(b)(1).  Beyond conclusory statements and a discussion of nonsanctionable conduct, Kroger

provides no support for its claim that the pending suit was filed for an improper purpose.  Because

---

[8] Technically, Kroger cites Ayissi's "duplicative filings" and repeated "failure to adequately prosecute" her claims as
instances of harassment that have led to unnecessary litigation costs.  As explained above, however, the limits of Rule
11 require that the court only consider the filing of Ayissi's complaint in the present suit.

no improper purpose is "objectively ascertainable," the court finds sanctions under Rule 11(b)(1) are not warranted.

Kroger cites to several cases, arguing that "[c]ourts have repeatedly held that this type of repetitive litigation warrants sanctions." Dkt. 12 at 6. For various reasons, these cases are not convincing. First, none of the cases presented matches up factually with the pending suit. Second, at least one of the cases discusses wholly discrete Rule 11 issues. *See Harmony Drilling Co. v. Kreutter*, 846 F.2d 17, 19 (5th Cir. 1988) (addressing whether notice is always required before imposing sanctions and whether less severe sanctions were required in the specific case). Finally, these cases merely present situations in which the Fifth Circuit agreed that the district judge did not abuse his or her discretion when levelling sanctions on a litigant. In other words, they reaffirm the principle that sanctions are soundly within the discretion of the district court. And after careful consideration, this court determines that sanctions against Ayissi are not warranted. The only thing the cases cited by Kroger have in common is that they include situations where a plaintiff's claims were barred by res judicata and then he or she was sanctioned under Rule 11. This court declines to read into those cases a rule that sanctions automatically follow a dismissal on res judicata grounds.

Because the court has determined that sanctions are not warranted under any of the first three provisions of Rule 11(b), Kroger's motion for sanctions is DENIED. While the court does not impose sanctions on Ayissi on this motion, she is warned that if she files another lawsuit against Kroger based on the same nucleus of operative facts, she could be sanctioned. And now that she fully understands how res judicata applies to her situation, she will have a much more difficult time claiming that her complaint is legally defensible and not presented for an improper purpose.

## IV. CONCLUSION

Kroger's motion to dismiss (Dkt. 7) is GRANTED.  Accordingly, Ayissi's claims against Kroger are DISMISSED WITH PREJUDICE.  Kroger's motion for sanctions (Dkt. 12) is DENIED.

Signed at Houston, Texas on November 13, 2020.

_____
Gray H. Miller
Senior United States District Judge